STATE OF MISSOURI    )
                     ) SS
ST. LOUIS COUNTY     )

### IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
### STATE OF MISSOURI

| | |
|---|---|
| BRIAN MANUELE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 09SL-CC03632 |
| ) | |
| CITY OF JENNINGS, et al. ) | Div. No. 20 |
| ) | |
| Serve at: ) | JURY TRIAL REQUESTED ON ALL |
| ) | COUNTS TRIABLE TO JURY |
| YOLONDA FOUNTAIN-HENDERSON ) | |
| *in her official capacity as Councilwoman* ) | |
| *and her individual capacity,* ) | |
| ) | |
| Serve at: ) | |
| ) | |
| 2437 Sharidge ) | |
| Jennings, MO 63136 ) | |
| ) | |
| RICHARD G. WALSH ) | |
| *in his official capacity as Asst. Chief of* ) | |
| *Police and his individual capacity,* ) | |
| ) | |
| Serve at: ) | |
| ) | |
| 5445 Jennings Rd. ) | |
| Jennings, MO 63136 ) | |
| ) | |
| ROBERT J. ORR ) | |
| *in his official capacity as Chief of Police* ) | |
| *and his individual capacity,* ) | |
| ) | |
| Serve at: ) | |
| ) | |
| 5445 Jennings Rd. ) | |
| Jennings, MO 63136 ) | |
| ) | |
| BENJAMIN SUTPHIN ) | |

1


**Defendant's Exhibit**
B

*in his official capacity as Mayor of Jennings* )
*and his individual capacity,* )
                                              )
Serve at:                                     )
                                              )
2120 Hord                                     )
Jennings, MO 63136                            )
                                              )
        Defendants.                           )

## FIRST AMENDED PETITION

COMES NOW, Plaintiff Brian Manuele, by and through counsel, and for his First

Amended Petition against Defendants, states as follows:

1.      At all times relevant hereto, Plaintiff Brian Manuele, was and is an adult resident

of St. Louis County, Missouri.  Manuele was a probationary police officer for the City of

Jennings for less than one year and served as an at-will employee of Defendants during his

employment.  As a probationary police officer Manuele served as a Field Training Officer for the

Jennings Police Department ("Jennings Police").

2.      Defendant City of Jennings is a municipal corporation organized and existing

under the domestic laws of the State of Missouri and located within St. Louis County, Missouri.

3.      Defendant Richard G. Walsh was, at all times relevant to this action, Assistant

Chief of Police for the City of Jennings.  Walsh is a Defendant in his individual capacity and in

his official capacity as Assistant Chief of Police for the City.

4.      Defendant Robert J. Orr was, at all times relevant to this action, Chief of Police

for the City of Jennings.  Orr is a Defendant in his individual capacity and in his official capacity

as Chief of Police for the City.

5.      Defendants Walsh and Orr were decision-makers regarding the employment of

Plaintiff and worked to carry out the retaliatory actions of the Mayor and City Coucil in violation

2

of Plaintiff's state and federally protected rights for the City.

6.      Benjamin Sutphin was, at all times relevant to this action, Mayor of the City of Jennings. Sutphin is a Defendant in his individual capacity and in his official capacity as Mayor for the City. The Mayor makes recommendations to the City Council which are commonly approved with little discussion, as in this case. The Mayor's recommendations in this case were tainted by discriminatory and retaliatory animus as stated more fully below.

7.      Defendants Allan D. Stichnote, Dennis Campbell, David Schmerber, Rodney Epps, and Yolonda Fountain-Henderson were, at all times relevant to this action, Council members for the City of Jennings (collectively referred to as "the City Council"). The City Council served as an employer of the City's police officers and made decisions regarding the hiring and firing of police officers, decisions regarding promotion of police officers, and was a decision maker for the City of Jennings. The City Council approves all newly hired police officers and makes decisions regarding the continuing employment of the City's police officers. The City Council makes employment decisions that directly affect Jennings police officers. The Council's decisions, as stated more fully below, were tainted by its own animus and that of the Mayor, who was directly involved in the decision-making process, against Plaintiff. Council members are Defendants in their individual capacity and in their official capacity as Council members for the City.

8.      Defendants were the employer of Plaintiff and at all times relevant hereto were acting directly as Plaintiff's employer.

9.      The City Council made the decision to hire and fire Plaintiff through recommendation of the Mayor as his employer.

10.     At all times relevant hereto, Plaintiff was an at-will employee of Defendants

3

having no contract of employment with Defendants.

11.     All of the acts and occurrences herein set forth took place within St. Louis County, Missouri.

### COMMON FACTUAL ALLEGATIONS

12.     Plaintiff was hired by Defendants on or about April 28, 2008 as a probationary police officer serving in said capacity as an at-will employee of the City of Jennings.

13.     The Fraternal Order of Police (FOP) is a police organization that assists officers and departments with unionization and collective bargaining.

14.     Manuele became a member of the Fraternal Order of Police, Lodge 15 (hereinafter FOP) in 2008 after accepting employment with the Jennings Police Department.

15.     Based upon information and belief, all, or nearly all, members of the Jennings Police Department joined the FOP after Contract Negotiations Board elections in the fall of 2008. The Negotiations Board was to negotiate with the City of Jennings on behalf of the police officers employed by the City.

16.     Manuele became aware of Defendant Sutphin's views on unionization through comments from other officers, newspaper reports, information gained through the FOP, and information posted on a bulletin board in the police station. Mayor Sutphin was strongly against the union and did not want the police officers in Jennings to organize and unionize. Sutphin stated his anti-union animus freely and his feelings against unionization and those involved in the unionization, organizing and collective bargaining process.

17.     In the fall of 2008, Manuele became a member of the Union Negotiating Committee. The other members of the Committee were Corporal Chastaine, Sergeant Tisius, Corporal Hart, and Officer Apple. The Committee was responsible for creating a contract to

4

present to the City as part of the collective bargaining process.

18.     The Union Negotiating Board, together with FOP, made numerous requests for financial documents to which they were entitled under the Sunshine Law. The City was not pleased with these requests.

19.     On or about January 7, 2009, Officer Dominic Pendino made claims of harassment against Plaintiff Manuele.

20.     On or about January 7, 2009, Manuele received a memorandum from Defendant Walsh providing Manuele notice of the written complaint of harassment against him. The memorandum requested Manuele respond in writing to the complaint by January 14, 2009.

21.     On January 8, 2009, Manuele provided a response memorandum to Defendant Walsh. Manuele denied all allegations and explained that Pendino's complaint was a final attempt by Pendino to save his own employment. Manuele's response provided a description of the well-known deficiencies of Pendino as a law enforcement officer, including concerns with officer safety and safety to the general public.

22.     Following Manuele's submission of the January 8, 2009 memorandum, Defendant Walsh informed Manuele that Pendino's allegations were either untrue or unsubstantiated.

23.     A rough draft of the union contract was finished in early 2009. Officer Apple disclosed a copy of this document to Sergeant Patrick. Shortly thereafter, copies were leaked throughout the Jennings city government. Copies spread to both the city council and the Mayor.

24.     Manuele was responsible for drafting the pay rates and salary schedule in the contract. In February or March 2009, Sergeant Tisius told Manuele that Defendant Sutphin was threatening to fire Manuele because of his work on the contract and for his role in the negotiation and collective bargaining process.

5

25. On April 4, 2009, Manuele received a memorandum from Defendant Walsh at the direction of the Jennings City Council. The memorandum ordered Manuele to be available for polygraph testing regarding the Pendino complaint on April 8, 2009 at 11:00 a.m. at the Jennings Police Department.

26. When questioned as to why this issue had not been resolved, Defendant Walsh's only explanation was that the City Council had ordered the polygraph. At this point, the Mayor became part of the investigation of Plaintiff and he worked to find a polygraph examiner. Such involvement in internal police investigations went far beyond his duties as Mayor. The reason for such intense involvement was the Mayor's animus towards unionization and particularly toward Plaintiff for his role in the contract drafting and collective bargaining process.

27. On April 8, 2009, Manuele appeared for the polygraph testing as ordered by the City Council, Mayor, and Walsh. At the time of the examination, Manuele was presented with a polygraph examination permission form ("PEPF") by the polygrapher.

28. The PEPF received by Plaintiff Manuele at the start of the testing stated as follows:

> 1. I, Brian Manuele, do hereby give my permission for a polygraph examination test of my own free will.
>
> 2. I have been told that all question areas will be explained to me before this examination and I agree to be questioned regarding the following matter(s):
>
> Allegations of Dominic Pendino
>
> 3. I have been told that I have the right to refuse or accept this examination. I have also been told I can stop this examination or leave the room at any time.
>
> 4. I have been told that I am not required to answer any questions or give any information at any time unless I want to of my own free will.

6

5.   I have been told that any information or answers I give could be used against me, or made available to the party that requested this examination, unless otherwise specified and agreed to in writing. I agree that my answers and the results of this examination may be reported to the follow:

Lt. Col. Richard Walsh

6.   I do hereby, of my own free will, grant permission to be examined by Psychophysiological Truth Evaluation Techniques, and hereby release the Polygraph Examiner, the party requesting the test, Lt. Col. Walsh, their agents and employees from any and all claims whatsoever, either in law or equity, by reason of said examination.
FULL NAME SIGNATURE _____

Date: _____   Time: _____   Location: _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This examination now being over, I certify that I took same voluntarily, was well treated and remained of my own free will; having been advised that I could leave at any time. I was told all the questions prior to my examination and I was not asked any questions which I considered personal or private in nature that were not relevant to my taking this test. I have been advised of the results of my test.

FULL NAME SIGNATURE _____

29.   Upon reading and reviewing the form, Manuele expressed concern to the polygraph examiner that, under the circumstances, several statements on the PEPF were untrue or misleading. Given that Manuele was compelled to take the polygraph examination, the following statements were false and misleading: 1) that he was taking the examination of his own free will, 2) that he agreed to be questioned regarding the matters at issue, 3) that he had the right to refuse or accept taking the examination and could stop or leave the examination room at any time, 4) that he was not required to answer any questions or provide any information unless he wanted to do so.

7

30.     Upon hearing Manuele's concerns, the polygraph examiner informed Manuele
that he was obligated to end the examination and would not administer the test that day.

31.     Immediately thereafter, Manuele informed Defendant Walsh in the presence of
the polygraph examiner that he was not refusing to take the test, but that he could not sign a
document that was false and that it would be dishonest to do so. The polygraph examiner agreed
and indicated the clear coercion being asserted against Manuele by the City.

32.     On April 8, 2009, Defendant Walsh gave Manuele a copy of the employee
violation report he had filed citing Manuele for a violation of Rules and Regulations No. 03-01
Sec.8.13A for refusing to comply with Walsh's verbal and written direct order given by a
superior officer under 03-01 1.13A to take the polygraph examination in a compelled manner.
The employee violation report further stated that Manuele's refusal to take the polygraph
examination constituted insubordination. Manuele was advised that his "refusal" to take the
polygraph examination could result in disciplinary action. This was in contrast to the polygraph
examiner recorded statement that Plaintiff never refused to take the examination.

33.     On April 8, 2009, Manuele submitted a response memorandum to Defendant
Walsh indicating that he did not refuse to comply with any order by a superior officer but that he
simply could not sign a PEPF with untrue statements. Since Manuele had been ordered to take
the polygraph, he was not taking it of his own free will as the document indicated.  Manuele
further pointed out that the examination was not being taken as part of a narrowly tailored police
investigation as he had already been cleared of all outstanding charges of misconduct. As such,
the continued investigation constituted a violation of his rights.

34.     Manuele proposed as a remedy that the PEPF indicate that the polygraph was
being taken pursuant to the directive of a superior officer and not of Manuele's own free will.

8

To the extent there was a conflict between the policies and procedures of the police department and the policies and procedures of the polygraph examiner, Manuele stated that he would work with the parties to resolve such issues and was not refusing to take the examination.

35.    None of the defendants sought to resolve the issues pursuant to Manuele's proposed remedy or any other remedy.

36.    On April 20, 2009, the Jennings City Council voted to terminate Manuele's employment "as a probationary/at-will police officer, effective immediately, for failing to co-operate in an investigation of a complaint of harassment filed against you by another officer, by your failure to submit to a polygraph test as ordered by Lt. Col. Walsh."

37.    Manuele's last day of employment was April 20, 2009, and on April 21, 2009 Plaintiff Manuele returned all of his department-issued gear.

38.    Prior to his wrongful termination, Plaintiff was employed by Defendants for less than one year from approximately April 28, 2008 until his termination on or about April 20, 2009.

39.    The Department of Public Safety's Peace Officer Standards and Training (POST) Program is an administrative and regulatory agency that is responsible for the licensure of peace officers within the state of Missouri.

40.    POST's police officer disciplinary process is conducted in accordance with Section 590.080.1, of the Revised Statutes of Missouri, which states the following:

> The Director of POST shall have cause to discipline any peace officer licensee who:
>
> (1) Is unable to perform the functions of a peace officer with reasonable competency or reasonable safety as a result of a mental condition, including alcohol or substance abuse;

9

> (2) Has committed any criminal offense, whether or not a criminal charge has been filed;
>
> (3) Has committed any act while on active duty or under color of law that involves moral turpitude or a reckless disregard for the safety of the public or any person;
>
> (4) Has caused a material fact to be misrepresented for the purpose of obtaining or retaining a peace officer commission or any license issued pursuant to this chapter;
>
> (5) Has violated a condition of any order of probation lawfully issued by the director; or
>
> (6) Has violated a provision of this chapter or a rule promulgated pursuant to this chapter.

41.    In *Brady v. Maryland*, 373 U.S. 83 (1963), the United States Supreme Court ruled that suppression by the prosecution of evidence favorable to a criminal defendant who has requested such information violates the defendant's due process rights. Under this doctrine, prosecutors are required to provide evidence that a police officer had lied in an official capacity if the prosecutor wishes to call such officer as a witness.

42.    It is a violation of Jennings Police Department rules and regulations to lie or cause a material fact to be misrepresented and such conduct would subject Plaintiff to discipline by Jennings Police.

43.    It is a strong mandate of public policy in the state of Missouri that police officers act in an honest and truthful manner and that police officers do not lie or misrepresent facts or occurrences on official documents.

44.    Manuele's union activities, including collective bargaining activities and actions as a concerned citizen, were a motivating factor in his termination for some of the following reasons:

10

a.  Mayor Sutphin vocally opposed the unionization of the Jennings Police
Department and retaliated against Plaintiff for his involvement by
recommending Manuele's termination based upon his union activities.

b.  The city negotiating board for the unionization process was formed in
secret with all members hand-picked by Defendant Sutphin.

c.  Defendant Sutphin failed to show even an outward appearance of
objectivity or fairness regarding formation of the union. It was widely
known by all involved that Defendant Sutphin wanted the union to fail and
was taking actions to carry out his threats, including terminating the
employment of Plaintiff.

d.  The Mayor threatened the jobs of those on the union negotiating board,
and carried out the termination of Manuele because of his union activities.

e.  The FOP was aware that the City was harassing employees involved in the
collective bargaining process and sent out protest documents to that effect.

f.  In addition to his allegation against Manuele, Officer Pendino made
additional unsubstantiated allegations against other officers. Only after
the proposed union contract was leaked to the City did the City force
Manuele to submit to a polygraph examination. Manuele was the only
officer accused by Pendino who was on the Union Negotiating
Committee. Those officers not on the committee received no discipline
relating to Pendino's allegations.

g.  Manuele was terminated just prior to the beginning of the collective
bargaining process. Due to Manuele's termination, the unionization

11

efforts quickly disbanded. The timing of events clearly shows Plaintiff's
termination was based upon his union activities.

h.    The Defendant City was under pressure from other local governments to
crush the union efforts. Jennings Police Department was one of the first
police departments in Missouri to attempt unionization in 2007-2008
following a Missouri Supreme Court decision allowing police collective
bargaining.

i.    Defendant Sutphin threatened to disband the Jennings Police Department
and replace the entire department if unionization efforts continued.

j.    Manuele, as the member of the Union Negotiating Committee in charge of
pay rates and salary schedule, sent numerous requests under the Sunshine
Law for financial documents to the City. These requests drew the ire of
Defendant Sutphin and the City and directly led to Manuele's termination.

## COUNT 1
## FREEDOM OF SPEECH
## (AGAINST ALL DEFENDANTS)

45.    That Plaintiff incorporates into Count 1 by reference as if fully set forth herein,
paragraphs 1 through 44 of the Petition.

46.    At all times material herein, Manuele has spoken out as a citizen and as a
representative of the Jennings Union Negotiating Committee and the FOP and its members on
matters of public concern, including, but not limited to, the police pay scale, requests to the city
for financial documents, and union collective bargaining and contract negotiations. Manuele's
right to speak freely on these and other matters of public concern is protected by the First and
Fourteenth Amendments of the United States Constitution. The public has a vital interest in free

12

and open discussion on issues of public importance.

47.     Upon learning that Manuele had spoken out on such matters of public concern, Defendants individually, separately, and/or jointly, engaged in actions, omissions and decisions, aimed at denying Manuele's rights and protections granted to him under the law, including but not limited to harassment, termination, efforts to silence him and his union efforts, as alleged in this Petition. These actions, omissions and decisions of Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Plaintiff to lose wages, compensation, entitlements and rights. In addition, these actions, omissions and decisions of the Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Plaintiff to suffer humiliation and harm to his reputation, emotional and mental injuries, pain and suffering, financial and other adverse consequences, for which he seeks full damages.

48.     Police personnel and the public have a right to know about important issues relating to the unionization of the Jennings Police Department and the ability to bargain collectively without retaliation.

49.     The Defendants' policies, directives, decisions, and procedures, both on their face and as applied, have chilled and deterred Manuele, and other City employees similarly situated, from exercising the constitutional right of free speech and resulted in Manuele's termination.

50.     The free speech interests of the public, and City personnel, Manuele, and current and future Jennings police officers outweigh any negative impact of free speech on the operations of the City or the police department.

51.     Such actions, omissions and decisions of Defendants individually, separately, and/or jointly, including, but not limited to harassment, termination, and efforts to silence

13

Manuele and his union efforts were a response to, and in retaliation for, Manuele's exercise of his constitutional right to speak about matters of public concern as granted by the First and Fourteenth Amendments to the United States Constitution. Any and all explanations offered by Defendants for their adverse actions, omissions and decisions against Manuele are false and pretextual.

52.     Such actions, omissions and decisions of Defendants City, Stichnote, Campbell, Schmerber, Epps, Fountain-Henderson, Walsh, Orr, and Sutphin, individually, separately, and/or jointly, including, but not limited to harassment, termination, and efforts to silence him and his union efforts, were taken under color of law, and such actions, omissions and decisions have deprived Manuele of his rights, privileges and immunities secured by the U.S. Constitution and laws in violation of 42 U.S.C. §1983, and for which liability and redress exist under 42 U.S.C. §1983.

53.     Such unlawful actions, omissions and decisions, as alleged herein, make the defendants fully liable to Manuele under 42 U.S.C. §1983 based on the authority and actual decisions of Defendant City and other Defendants. In addition, such unlawful actions, omissions and decisions, as alleged herein, were based on the decision-making authority of the Defendant City, and were based on the policy, custom and practice of the City. Any decision of the City and its agents, employees, supervisors, and representatives was motivated by anti-union animus and/or the City is liable under a "cat's paw" theory because of the influence and recommendations of the Mayor regarding Manuele.

54.     Such actions, omissions and decisions of Defendants City, Stichnote, Campbell, Schmerber, Epps, Fountain-Henderson, Walsh, Orr, and Sutphin, individually, separately, and/or jointly, alleged herein, were done in a knowing, willful, reckless, and bad faith manner, and

14

violate clearly established constitutional and statutory provisions and rights of which a reasonable person would have known.

## COUNT 2
## FREEDOM OF ASSOCIATION
## (AGAINST ALL DEFENDANTS)

55.     That Plaintiff incorporates into Count 2 by reference as if fully set forth herein, paragraphs 1 through 54 of the Petition.

56.     At all material times, Manuele was a member of the Union Negotiating Board and was responsible for determining a pay scale for police officers to propose as part of the collective bargaining process. This Board was attempting to create a union for police officers at the Jennings Police Department with support of the FOP.

57.     In this role, Manuele acted as a leader and active spokesperson for a union at the Jennings Police Department. Manuele's right to freedom of association with the FOP and other bargaining unit members speaking and organizing on matters of public concerns is protected by the First and Fourteenth Amendments of the United States Constitution.

58.     Because Manuele was a member of the Negotiations Board, a leader, and a spokesperson for unionization at the Jennings Police Department, Defendants City, Stichnote, Campbell, Schmerber, Epps, Fountain-Henderson, Walsh, Orr, and Sutphin, individually, separately, and/or jointly, engaged in actions, omissions and decisions, aimed at denying Manuele's employment rights and protections granted him under law, including, but not limited to, harassment, termination, and efforts to silence Manuele and bar the creation of a union at Jennings Police Department. These actions, omissions, and decisions of Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Manuele to lose wages, compensation, entitlements and rights. In addition, these actions,

15

omissions and decisions of the defendants, individually, separately and/or jointly, were designed to cause, have caused and will continue to cause Manuele to suffer humiliation and harm to his reputation, emotional and mental injuries, pain and suffering, financial and other adverse consequences, for which Manuele seeks full damages.

59.     Defendants have adopted, applied and enforced policies, directives, decisions, procedures and practices which have imposed unconstitutional prior restraints on the free association rights of Manuele and other officers similarly situated including practices and procedures in retaliation for Plaintiff's protected union, collective bargaining and associated activities. Such policies, directives, decisions and procedures, both facially and as applied, have prevented, prohibited, and restricted the Plaintiff from associating with the City's employees, the FOP, concerned citizens, and collective bargaining members and matters of public concern on union matters and matters of public concern.

60.     Manuele's right to freely associate is protected by the First and Fourteenth Amendments to the United States Constitution.

61.     Defendants' policies, directives, decisions, and procedures, both on their face and as applied, have chilled and deterred Plaintiff and other City employees similarly situated, from exercising the constitutional right of free association, as alleged in this Petition.

62.     Such actions, omissions and decisions of Defendants City, Stichnote, Campbell, Schmerber, Epps, Fountain-Henderson, Walsh, Orr, and Sutphin, individually, separately, and/or jointly, including, but not limited to harassment, termination, and efforts to silence him and his union efforts and bar the union in its entirety, were taken in response to, and in retaliation for, Manuele's exercise of his constitutional and lawful rights of freedom of association, in violation of Manuele's rights safeguarded under the First and Fourteenth Amendments to the United States

16

Constitution. The grounds and reasons offered by Defendants for their adverse actions, omissions and decisions against Manuele were false and pretextual.

63.     Such actions, omissions and decisions of Defendants City, Stichnote, Campbell, Schmerber, Epps, Fountain-Henderson, Walsh, Orr, and Sutphin, individually, separately, and/or jointly, including, but not limited to harassment, termination, and efforts to silence him and his union efforts and bar the union in its entirety, were taken under color of law, and such actions, omissions and decisions have deprived Manuele of his rights, privileges and immunities secured by the U.S. Constitution and laws in violation of 42 U.S.C. §1983, and for which liability and redress exist under 42 U.S.C. §1983.

64.     Such unlawful actions, omissions and decisions, as alleged herein, make Defendants fully liable to Manuele under 42 U.S.C. §1983 based on the authority and actual decisions of Defendant City and the other Defendants. In addition, such unlawful actions, omissions and decisions, as alleged herein, were based on the policymaking and final decision-making authority of the Defendant City, and were based on the policy, custom and practice of the City. Any decision of the City and its agents, employees, supervisors, and representatives was motivated by anti-union animus and/or the City is liable under a "cat's paw" theory because of the influence and recommendations of the Mayor regarding Manuele.

65.     Such actions, omissions and decisions of Defendants City, Stichnote, Campbell, Schmerber, Epps, Fountain-Henderson, Walsh, Orr, and Sutphin, individually, separately, and/or jointly, alleged herein, were done in a knowing, willful, reckless, and bad faith manner, and violate clearly established constitutional and statutory provisions and rights of which a reasonable person would have known.

17

## COUNT 3
### WRONGFUL TERMINATION – REFUSAL TO PERFORM AN ILLEGAL ACT OR AN ACT CONTRARY TO A STRONG MANDATE OF PUBLIC POLICY (AGAINST ALL DEFENDANTS EXCEPT CITY OF JENNINGS)

66.     That Plaintiff incorporates into Count 1 by reference as if fully set forth herein, paragraphs 1 through 65 of the Petition.

67.     Plaintiff was ordered to take a polygraph test, which included the signing of a PEPF that stated he was taking a polygraph test of his own free will. This was an order that would have caused a material fact to be misrepresented on an official document in violation of 590.080.1(4) RSMo.

68.     Plaintiff acted honestly and with good morals by not signing an untruthful statement and document.

69.     Plaintiff would have been subject to discipline by POST had he signed the untruthful polygraph examination permission form.

70.     Had Plaintiff lied in his official capacity, prosecutors wishing to call Plaintiff as a witness at trial would have had to disclose that information to criminal defendants. If Plaintiff had been found to have lied in his official capacity it would have made it difficult for him to effectively testify in criminal cases.

71.     By not signing the PEPF which contained an untruthful statement, Plaintiff was not allowed to take the polygraph examination.

72.     Defendant City Council stated in their letter to Plaintiff that "they voted to terminate your employment as a probationary/at-will police officer, effective immediately, for failing to co-operate in an investigation of a complaint of harassment filed against you by another officer, by your failure to submit to a polygraph test as ordered by Lt. Col. Walsh."

18

73.    Defendants fired Plaintiff based upon Plaintiff's failure to agree to sign a document that contained untruthful and false statements.

74.    The actions of the Defendants establish that the exclusive and/or motivating reason for Plaintiff being discharged was his refusal to violate Missouri public policy.

75.    Any newly created justification for Plaintiff's termination is pretextual and/or false.

76.    Defendants' conduct in wrongfully terminating Plaintiff's employment was done intentionally, knowingly, maliciously, and in willful and wanton disregard and reckless indifference to Plaintiff's rights subjecting Defendants to the imposition of punitive damages against them.

77.    As a direct result of Defendants' unlawful acts, as aforesaid, Plaintiff suffered emotional distress and experienced lost wages, benefits of employment, fringe benefits incident to employment and Plaintiff will continue to experience and suffer such damages into the future.

## COUNT 4
## WRONGFUL TERMINATION – PLAINTIFF WAS TERMINATED FOR ACTING IN A MANNER PUBLIC POLICY WOULD ENCOURAGE
## (AGAINST ALL DEFENDANTS EXCEPT CITY OF JENNINGS)

78.    That Plaintiff incorporates into Count 2 by reference as if fully set forth herein, paragraphs 1 through 77 of the Petition.

79.    Plaintiff was acting in accordance with the public good and Section 590.080.1 RSMo. when he refused to sign the polygraph examination permission form which contained material facts that were false and misrepresented.

80.    In the course of Plaintiff's official duties he refused to sign a document that contained a misrepresentation or lie, and this conduct was in accordance with Section

19

590.080.1(4) RSMo.

81.     Plaintiff acted honestly and with good moral turpitude in not signing an untruthful statement.

82.     Had Plaintiff lied in his official capacity, prosecutors wishing to call Manuele as a witness at trial, would have had to disclose that information to criminal defendants. If Plaintiff had been found to have lied in his official capacity it would have made it difficult for him to effectively testify in criminal cases.

83.     It would have been in violation of a strong mandate of public policy for Plaintiff to lie by signing a false official document.

84.     Public policy required Plaintiff to refuse to sign untruthful statements and represent such statements as truthful.

85.     It was Plaintiff's failure to sign an untruthful or misleading document that resulted in his termination.

86.     As a direct result of not signing a false document, the City Council terminated Manuele's employment on April 20, 2009.

87.     The actions of the Defendants establish that the exclusive and/or motivating reason for Plaintiff being discharged was refusal to violate Missouri public policy.

88.     Any newly created justification for Plaintiff's termination is pretextual and/or false.

89.     Defendants' conduct in wrongfully terminating Plaintiff's employment was done intentionally, knowingly, maliciously, and in willful and wanton disregard and reckless indifference to Plaintiff's rights subjecting Defendants to the imposition of punitive damages against them.

20

90.     As a direct result of Defendants' unlawful acts, as aforesaid, Plaintiff suffered

emotional distress and experienced lost wages, benefits of employment, fringe benefits incident

to employment and Plaintiff will continue to experience and suffer such damages into the future.

## COUNT 5
## WRONGFUL TERMINATION – PLAINTIFF REPORTED WRONGDOING OR VIOLATIONS OF LAW OR PUBLIC POLICY BY DEFENDANTS TO HIS SUPERIORS (AGAINST ALL DEFENDANTS EXCEPT CITY OF JENNINGS)

91.     That Plaintiff incorporates into Count 3 by reference as if fully set forth herein,

paragraphs 1 through 90 of the Petition.

92.     Plaintiff reported to superiors and/or to public authorities serious misconduct that

constituted a violation of the law and of well-established and clearly mandated public policy.

93.     Plaintiff was acting in accordance with Section 590.080.1 RSMo. when he

reported to Lt. Col. Walsh that the polygraph test included signing a PEPF that included false

statements.

94.     Defendant City Council was aware of the fact that Plaintiff did not refuse to take

the polygraph test but only refused to sign an official document containing material facts that

were being misrepresented, and that signing the document was part of Lt. Col. Walsh's direct

orders as of April 20, 2009. The City Council was aware that Manuele reported this violation of

law and of public policy at the time of his termination.

95.     The actions of Defendants establish that the exclusive and/or motivating reason

for Plaintiff's discharge was his reporting of violations of Missouri public policy.

96.     Any newly created lawful justification for Plaintiff's termination is pretextual

and/or false.

97.     Defendants' conduct in wrongfully terminating Plaintiff's employment was done

21

intentionally, knowingly, maliciously, and in willful and wanton disregard and reckless indifference to Plaintiff's rights subjecting Defendants to the imposition of punitive damages against them.

98. As a direct result of Defendants' unlawful acts, as aforesaid, Plaintiff suffered emotional distress and experienced lost wages, benefits of employment, fringe benefits incident to employment and Plaintiff will continue to experience and suffer such damages into the future.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendants, as follows:

1. Award Plaintiff actual damages including back-pay, front-pay, compensatory damages, including an amount equal to his lost wages and other benefits of employment, with interest;

2. Award Plaintiff damages for emotional distress and compensatory damages;

3. Award Plaintiff punitive damages for Defendants' intentional and malicious violation of Plaintiff's rights;

4. Award Plaintiff front-pay which would have accrued had Plaintiff not been terminated;

5. Award Plaintiff his reasonable attorneys' fees and costs incurred herein; and

6. Order that Plaintiff's personnel file be cleared of any and all reference to misconduct and that Plaintiff's name be cleared of any and all misconduct in his official capacity;

7. Grant Plaintiff such other and further legal relief as this Court deems just and proper.

22

Respectfully Submitted,

By:      _____

Kevin J. Dolley, MBE #54132
Law Office of Kevin J. Dolley
7750 Clayton Road, Suite 102
St. Louis, MO 63117-1343
Phone: (314) 645-4100
Fax:    (314) 645-7901
kevin@dolleylaw.com

*Attorney for Plaintiff Brian Manuele*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and complete copy of the foregoing was served upon the parties of record by depositing same in the United States mail, certified mail, postage prepaid, on August 30, 2010, addressed to: D. Keith Henson, Paule, Camazine & Blumenthal, P.C., 165 N. Meramec Avenue, Suite 110, St. Louis, MO 63105-3772.

23