UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BRIAN MANUELE,                          )
                                        )
            Plaintiff,                  )
                                        )
    vs.                                 )        Case No. 4:10CV1655 JAR
                                        )
CITY OF JENNINGS, et al.,               )
                                        )
            Defendants.                 )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Allan D. Stichnote, Dennis Campbell,

David Schmerber, Rodney Epps, Yolonda Fountain-Henderson, Richard G. Walsh, Robert J Orr,

Benjamin Sutphin, and the City of Jennings, Missouri's Motion for Partial Summary Judgment on

Counts I and II of the Second Amended Complaint (ECF No. 65) and Defendants' Motion to Strike

the Inadmissible Allegations in Plaintiff's Affidavit and the Inadmissible Exhibits Plaintiff

Submitted In Support of his Response in Opposition to Defendants' Motion for Partial Summary

Judgment on Counts I and II (ECF No. 92). These matters have been fully briefed and are ready for

disposition.

## BACKGROUND

This case originally was filed in State Court and was removed to Federal Court on September

7, 2010. (ECF Nos. 1, 4). Remaining before the Court are Plaintiff's claims for "Freedom of

Speech" (Count I) and "Freedom of Association" (Count II). (Second Amended Complaint (ECF

No. 18; hereinafter "Complaint" or "Compl.").)[1] Plaintiff Brian Manuele ("Plaintiff" or "Manuele")

---

[1]The Honorable Judge Rodney Sippel granted summary judgment in favor of defendants on
Plaintiff's claims for Wrongful Termination--Refusal to Perform an Illegal Act or an Act Contrary
to a Strong Mandate of Public Policy (Count III), Wrongful Termination--Plaintiff was Terminated
for Acting in a Manner Public Policy Would Encourage (Count IV), and Wrongful Termination--
Plaintiff Reported Wrongdoing or Violations of Law or Public Policy by Defendants to His

names the City of Jennings and several individual defendants. Defendant Richard J. Walsh ("Walsh") was the Assistant Chief of Police for the City of Jennings, Missouri. (Statement of Uncontroverted Material Facts ("SUMF"), ECF No. 67, ¶2). Defendant Robert J. Orr ("Orr") was Chief of Police for the City of Jennings, Missouri. (SUMF, ¶3). Defendant Benjamin Sutphin ("Mayor Sutphin") was the Mayor of the City of Jennings, Missouri. (SUMF, ¶4). Defendants Allan D. Stichnote ("Stichnote"), Dennis Campbell ("Campbell"), David Schmerber ("Schmerber"), Rodney Epps ("Epps"), and Yolonda Fountain-Henderson ("Fountain-Henderson") were members of the City Council for the City of Jennings, Missouri. (SUMF, ¶5).[2]

### A. Plaintiff's Union Membership

Plaintiff was hired as a probationary police officer and an at-will employee for the City of Jennings on April 28, 2008. (SUMF, ¶8). Plaintiff became a member of the Fraternal Order of Police, Lodge 15 ("FOP") in the fall of 2008. (SUMF, ¶39). On November 13, 2008, police officers for the City of Jennings voted to make the FOP its collective bargaining representative. (SUMF, ¶40). Plaintiff also became a member of the FOP Union Bargaining Committee. (SUMF, ¶41).

In a letter dated January 21, 2009, the FOP attorney, Greg Kloeppel sent a letter to Balke confirming that Officers Kris Hart, Eugene Tisius, Byron Chastain, and Plaintiff had been selected as representatives from the City of Jennings Police Department for collective bargaining with the City of Jennings at the "meet and confer" meetings. (SUMF, ¶¶103, 105). Balke provided the January 21, 2009 letter to Mayor Sutphin. (SUMF, ¶104). In turn, the Jennings City Counsel authorized the Mayor, the City attorney, and the City Clerk, or their designees to act on behalf of the City for the "meet and confer" meeting. (SUMF, ¶110).

---

Superiors (Count V). (ECF No. 99).

[2]Although not a named defendant, Cheryl Balke is the Clerk for the City of Jennings. (SUMF, ¶6).

On February 27, 2009, Kloeppel forwarded a letter to Mayor Sutphin, Balke and City attorney Jamis Kresyman confirming the initial meet and confer meeting with the Union Bargaining Committee for the police officers would occur on March 10, 2009. (SUMF, ¶129). Plaintiff did not attend the first meet and confer because of personal issues. (SUMF, ¶166). Officer Kris Hart testified that Mayor Sutphin stated at the meeting that the Union was a bad idea and that officers had been forced into joining the union against their will. (SUMF, ¶169). Hart testified that Sutphin stated, "I will go to St. Louis County Police Department before this union bankrupts this City." (SUMF, ¶170). Officer Byron Chastain testified that Mayor Sutphin stated that "[b]efore he let this department bring us down or before he signed a contract and let this department bring us down, he would get rid of us and bring in St. Louis County." (SUMF, ¶175). Officer Eugene Tisius heard Mayor Sutphin state that "We will get rid of the police department and go with County before we let you guys take our city down." (SUMF, ¶187). Mayor Sutphin denies making these statements. (SUMF, ¶¶171, 176, 188).

**B.     Harassment Allegations and Investigation**

On January 7, 2009, Officer Dominic Pendino ("Pendino"), a fellow Jennings police officer, filed a harassment complaint against Plaintiff regarding actions that occurred in September or October of 2008. (SUMF, ¶90; ECF No. 79-23). Pendino did not identify any other officers to substantiate his allegations that Plaintiff harassed him. (Exhibit 25; ECF No. 79-25, p. 3). Pendino also claimed that he received inadequate training. (SUMF, ¶¶90-91). Plaintiff was required to file a response to the complaint. (SUMF, ¶¶93, 144, 147, 190). Therein, Plaintiff denied the allegations made by Pendino and described several issues with Pendino's safety procedures. (Exhibit 25; ECF No. 79-25, p. 3).

Walsh investigated the complaints Pendino made about his training and regarding Plaintiff. (SUMF, ¶¶93, 114). On February 20,2009, Walsh prepared a memorandum to Orr detailing his

investigation concerning the harassment complaint made by Pendino against Plaintiff and Pendino's complaints about his training. (SUMF, ¶121). In his memorandum, Walsh indicated that Plaintiff denied the allegations made by Pendino and that no independent substantiation of Pendino's allegations had been discovered. Id. Walsh also identified some issues with Pendino's performance and training. (Exhibit 25; ECF No. 79-25, pp. 3-4). On February 20, 2009, Officer Paul Bachman, who had been assigned by Walsh to train and evaluate Pendino, recommended terminating Pendino. (SUMF, ¶¶120, 122). On February 23, 2009, Lieutenant Shawn Lane concurred in Bachman's recommendation. (SUMF, ¶123). On or around February 23, 2009, Walsh recommended to Orr that Pendino be terminated. (SUMF, ¶124). On February 23, 2009, Orr recommended to Mayor Sutphin and the City Council members that Pendino be terminated due to lack of progress in field training. (SUMF, ¶126). In late February 2009, Walsh reported to Balke that he could not substantiate the harassment complaint of Pendino against Plaintiff. (SUMF, ¶128).

Based upon the recommendation of Orr, Mayor Sutphin recommended the termination of Pendino to the Jennings City Council/Personnel Committee at a special meeting on March 2, 2009. (SUMF, ¶141). The Jennings City Council noted that the investigation of the harassment complaint made by Pendino against Plaintiff was inconclusive. (SUMF, ¶143). The Jennings City Council/Personnel Committee decided to request that Pendino and Plaintiff submit to polygraph testing because the City Council could not tell who was telling the truth about the harassment based upon the information provided. (SUMF, ¶144). The Jennings City Council decided not to terminate Pendino until it received the results of the polygraph tests of Pendino and Plaintiff. (SUMF, ¶145). Sutphin gave Walsh a verbal order to request polygraph examinations of Pendino and Plaintiff based upon the decision of the Jennings City Council/Personnel Committee. (SUMF, ¶¶147-49). Plaintiff testified that he told Walsh that the only reason the investigation into Pendino's complaint was

continuing was in retaliation for Plaintiff's involvement in the Union Bargaining Committee (SUMF, ¶151), Walsh does not recall this statement (SUMF, ¶152).

On March 30, 2009 and April 2, 2009, Walsh issued written orders to Pendino and Plaintiff that their polygraph testing was scheduled for April 8, 2009. (SUMF, ¶190). Plaintiff had a problem with the Polygraph Permission Form provided by the polygraph administrator, Sam Yarborough. (SUMF, ¶195). Plaintiff had been ordered to take the polygraph test, but the form stated that he was present for the polygraph by his own free will. Id. Upon learning that Plaintiff did not take the polygraph examination as ordered, Walsh issued Plaintiff an "Employee Violation Report" for failure to comply with a verbal and written order. (SUMF, ¶205). Plaintiff responded to the "Employee Violation Report" by noting that he did not refuse to comply with an order; rather, he would have been lying if he had stated he was taking the polygraph of his own free will. (SUMF, ¶¶193-97, 208).

Walsh determined that Pendino's harassment complaint against Plaintiff was sustained because he did not submit to the polygraph test as directed. (SUMF, ¶219). Walsh also determined that Plaintiff's failure to comply with orders to take the polygraph examination constituted insubordination. (SUMF, ¶220). After reviewing Walsh's determinations, Orr recommended terminating Plaintiff to Mayor Sutphin and the City Councilmembers. (SUMF, ¶¶224-29). Based upon the recommendation of Orr, Mayor Sutphin verbally recommended the termination of Plaintiff to the City Councilmembers. (SUMF, ¶¶237-39).

On April 20, 2009, the Jennings City Council voted to terminate Plaintiff's employment as a Jennings police officer. (SUMF, ¶¶237-41).[3] Plaintiff asserts his union activities were a motiving factor in his termination.[4]

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258. "[A] properly supported motion for summary judgment is not defeated

---

[3]Pendino also was terminated due to his lack of progress during extended training. (SUMF, ¶247).

[4]Background of this case also can be found at ECF No. 99; Manuele v. City of Jennings, No. 4:10 CV 1655 RWS, 2011 U.S. Dist. LEXIS 107037, at *1-2 (E.D. Mo. Sept. 20, 2011).

by self-serving affidavits." <u>Conolly v. Clark</u>, 457 F.3d 872, 876 (8th Cir. 2006) (citing <u>Davidson & Assocs. v. Jung</u>, 422 F.3d 630, 638 (8th Cir. 2005)).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. <u>Celotex Corp.</u>, 477 U.S. at 331, n.2. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" <u>Torgerson</u>, 643 F.3d at 1042 (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

## DISCUSSION

## I.    MOTION FOR SUMMARY JUDGMENT

In his Complaint, Plaintiff alleges claims under 28 U.S.C. §1983 for "Freedom of Speech" against all defendants (Count I) and "Freedom of Association" against all defendants (Count II). Essentially, Plaintiff's claims are for first amendment retaliation. To state a prima facie case for first amendment retaliation, it is necessary for Plaintiff to show: (A) he participated in protected speech or activities; (B) the defendants took an adverse employment action against him; and (C) the protected speech or activities was/were a substantial or motivating factor in the defendants' decision to take the adverse action. <u>Dempsey v. City of Omaha</u>, 633 F.3d 638, 645 (8th Cir. 2011); <u>Davenport v. Univ. of Ark. Bd. of Trs.</u>, 553 F.3d 1110, 1113 (8th Cir. 2009); <u>Morris v. City of Chillicothe</u>, 512 F.3d 1013, 1018-20 (8th Cir. 2008); <u>see also</u> <u>Campbell v. Arkansas Dep't of Correction</u>, 155 F.3d 950, 958 (8th Cir. 1998) ("To establish a retaliatory [action] in violation of the first amendment a public employee must show that his speech was protected and that it was a substantial or motivating factor in the adverse employment action taken against him."). In addition, the Court is mindful of

the Eighth Circuit's recent reiteration that "[t]here is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." <u>Torgerson</u>, 643 F.3d at 1043 (quoting <u>Fercello v. County of Ramsey</u>, 612 F.3d 1069, 1077 (8th Cir. 2010)).

Defendants claim that there is no evidence that Plaintiff was terminated from his employment because of his union involvement. Defendants claim that they were not aware of Plaintiff's union activity during the relevant time period. Likewise, they assert that Plaintiff cannot provide any evidence to support a claim that Plaintiff's union activities caused Defendants to terminate his employment. Rather, Defendants claim that the undisputed evidence demonstrates Plaintiff was terminated for a legitimate, non-discriminatory reason.

Plaintiff asserts that there is a material question of fact or law that the protected conduct in which he engaged caused Defendants to take the adverse employment action against him. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Response"), ECF No. 76, p. 2). Plaintiff claims that Defendants knew that he was involved in union organizing, and his involvement in these union organizing activities resulted in adverse employment actions against him. Plaintiff claims that there are disputed issues of material fact regarding Plaintiff's union involvement and Defendants' knowledge of and discouragement of such activities. <u>See</u> <u>St. Clair v. City of St. Peters</u>, Case No. 4:03cv976, p. 5 (Nov. 5, 2004 E.D. Mo.) ("St. Clair's assertions that the City knew about his union activities and that union organization was frowned upon is sufficient to raise a genuine issue of material fact that his employment was terminated in retaliation for such activities."). Specifically, Plaintiff claims that he was terminated for his role on the Union Bargaining Committee and as a member of the FOP. (Response, p. 5). Plaintiff notes that he joined the FOP in fall 2008 and was elected to the Union Bargaining Committee on December 3, 2008. City officials, including the Chief and Mayor, were given

notification of the Plaintiff's position as a representative for the joint bargaining sessions on January 21, 2009. See Exhibit 39, p. 2. Construing the evidence in the light most favorable to Plaintiff, the Court finds there to be a genuine issue of material facts regarding whether Plaintiff's involvement in union organizing may have played a role in Defendants' decision to terminate his employment.

## A.     Individual City Council Members

City Councilpersons Stichnote, Campbell, Schmerber, Epps, and Fountain-Henderson claim that they had no knowledge at any time that Plaintiff had joined the FOP in the fall of 2008, had been elected a member of the Union Bargaining Committee on or around December 3, 2008, or that Plaintiff was assigned to handle pay rates and salaries for police officers as a member of the Union Bargaining Committee. (SUMF, ¶48). Defendants assert that Plaintiff has not provided any evidence that the individual Councilmembers read the letter dated January 21, 2009 to Balke, confirming that Plaintiff was a member of the Union Bargaining Committee. (Reply of Defendants to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Reply"), ECF No. 89, p. 8). Rather, Defendants claim that Plaintiff's argument amounts to mere speculation that the Councilmembers knew of Plaintiff's protected activity. (Reply, p. 8).

Plaintiff cites to evidence that the City Council members knew of Plaintiff's involvement in protected activity. (Response, p. 8). For instance, Plaintiff cites to the media coverage of certain police officers' efforts to collectively bargain with the City of Jennings. (Id.). Plaintiff also claims that there was a public announcement that Plaintiff was part of the Union Bargaining Committee and a rough draft of the contract was leaked and widely distributed. (Id.).[5] Most notably, Mayor Sutphin and Balke received a January 21, 2009 letter indicating that Plaintiff was a member of the Union

---

[5]Plaintiff asserts that Officer Jones told Plaintiff that he had heard from one of the City Council members that Plaintiff was fired for collective bargaining. (Response, pp. 8-9). The Court agrees that this is hearsay. (Reply, p. 8).

Bargaining Committee. (Response, p. 9). In response, Mayor Sutphin sent a memorandum to the Jennings City Council requesting approval of a bargaining committee for the City. (Id.). Plaintiff claims that this demonstrates that Mayor Sutphin and the City Council knew the status of the collective bargaining negotiations and knew of the document that named Plaintiff as a member of the Union Bargaining Committee during the relevant time period. (Id.).

Moreover, Plaintiff identifies other circumstances surrounding his termination that provide "some evidence" of a causal relationship between his protected activity and the adverse employment action taken against him. Plaintiff claims that the City Council reopened a "dead" investigation and ordered Plaintiff to take a polygraph examination after it was informed that he was on the Union Bargaining Committee. (Response, p. 9). That is, Plaintiff notes that Walsh had stated that Pendino's claim was unsubstantiated, yet the City Council ordered Plaintiff to submit to a polygraph test. (Id.).[6] Finally, Plaintiff claims that the City Council authorized the hiring of an attorney who distributed an anti-union pamphlet entitled, "What Can the Union Really Do For You?" (Id.). Plaintiff claims that the sum total of these actions demonstrates an anti-union animus of the City Council. (Id.).

The Court finds that Plaintiff has identified sufficient evidence to survive summary judgment. Plaintiff presents evidence that the City Council had access to information that Plaintiff was a member of the Union Bargaining Committee during a very contentious period. Plaintiff also notes that the police department recommended to the City Council to terminate Pendino, essentially ending the investigation into the harassment allegations against Plaintiff, but the Council chose to

---

[6]Plaintiff also claims that Officer Lane told Officer Jones that the City Council did not want to allow collective bargaining. (Response, p. 9). In addition, Plaintiff states that in the fall 2008, Councilwoman Fountain-Henderson stated that the City Council would not permit collective bargaining. (Id., pp. 9-10). These statements, however, seem to be based upon hearsay and will not be considered by the Court.

reopen the investigation and order Plaintiff to take a polygraph test. The Court finds that the timing of the City Council's decision to reopen the investigation and ultimately terminate Plaintiff's employment, despite the recommendations of Orr and Walsh, demonstrates an issue of fact regarding the reason Plaintiff was terminated. The Court denies summary judgment on Plaintiff's claims against the individual City Council members.

### B.    Mayor Sutphin

Defendants claim that Mayor Sutphin's purported "discriminatory animus toward collective bargaining" is insufficient to establish a causal connection between Plaintiff's union activity and his termination. (Reply, p. 12). First, Defendants claim that the temporal proximity does not support a finding of a causal relationship to establish retaliation. Defendants claim that there is no temporal proximity because four (4) months passed between Plaintiff's protected activity and when his employment was terminated. Moreover, Defendants claim that Plaintiff has not identified any admissible evidence to establish that Mayor Sutphin made any statements or engaged in any conduct indicating that he singled Plaintiff out for adverse treatment based upon a retaliatory motive. (Reply, p. 13). Defendants claim that Plaintiff has not demonstrated that Mayor Sutphin had a reason to target Plaintiff for adverse treatment. (Reply, p. 13). Likewise, Defendants claim that Plaintiff has not shown that Mayor Sutphin had knew that Plaintiff acted as a spokesperson for the FOP, worked on pay rates for the proposed contract, and had a role on the Union Bargaining Committee. (Reply, pp. 13-14).

In response, Plaintiff argues that the temporal connection is closer than Defendants state. Plaintiff claims that Mayor Sutphin was not made aware of Plaintiff's role on the Union Bargaining Committee until more than a month after Plaintiff became a member. (Response, p. 14; SUMF, ¶49 (Mayor Sutphin claims that he did not know that Manuele had joined the FOP and been elected a member of the Union Bargaining Committee until he received a letter dated January 21, 2009).

More importantly, Plaintiff claims that the polygraph was ordered just over one month after Mayor Sutphin learned of Plaintiff's role on the Union Bargaining Committee. (Id., pp. 14-15).

As an additional basis of the Mayor's alleged anti-union bias, Plaintiff notes that Mayor Sutphin received a handout entitled, "What Can This Union Really Do for You?" from the labor attorney for the City of Jennings. (SUMF, ¶¶30-32). Mayor Sutphin approved the handout and submitted it to Walsh for distribution to the police officers before the election to determine whether the FOP would be the collective bargaining representative for the police officers for the City of Jennings. (SUMF, ¶¶30, 34).[7]

In addition, Plaintiff claims that Mayor Sutphin was aware of Plaintiff's protected speech through the Mayor's meeting with Walsh and Lane to discuss the police department and collective bargaining. (Response, p. 15). Several officers also testified that Mayor Sutphin made anti-union statements during the collective bargaining meeting. (SUMF, ¶¶169, 170, 175, 187).

The Court finds sufficient evidence to create an issue of fact regarding Plaintiff's claims against Mayor Sutphin. The Court finds that the temporal proximity between Mayor Sutphin learning of Plaintiff's membership on the Union Bargaining Committee and ordering Plaintiff to take the polygraph examination provide some evidence of discriminatory causation. See Reich v. Hoy Shoe Co., 32 F.3d 361, 365, n. 4 (8th Cir. 1994)(citing Rath v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir. 1992)("a showing that the adverse employment action so closely followed the protected activity in time could justify an inference of retaliatory motive"). Likewise, Plaintiff provides direct evidence of Mayor Sutphin's anti-union animus through statements he made during

---

[7]After consulting with Orr, however, Walsh did not distribute the Handout to police officers because he did not believe it was appropriate to distribute the Handout before the election. (SUMF, ¶¶35-37).

the meet and confer meetings and the anti-union pamphlet approved by him.  Accordingly, the Court finds ample evidence to allow claims against Mayor Sutphin to survive summary judgment.

###    C.    Chief Orr and Assistant Chief Walsh

Defendants argue that the evidence does not support a finding that Orr and Walsh had a retaliatory motive for terminating Plaintiff.  Defendants acknowledge that Orr and Walsh were aware of Plaintiff's position on the Union Bargaining Committee.  (SUMF, ¶47 (Walsh overheard statements by other police officers indicating that Plaintiff had joined the FOP and had been elected a member of the Union Bargaining Committee); SUMF, ¶46 (Orr had no knowledge that Plaintiff had joined the FOP and was a member of the Union Bargaining Committee until he received a copy of a letter dated January 21, 2009 from an attorney for the FOP).  Defendants, however, assert that Orr and Walsh's knowledge of Plaintiff's position on the Union Bargaining Committee is insufficient to establish a causal connection.  (Reply, p. 10).

Likewise, Defendants claim that Plaintiff provides no evidence that Orr and Walsh took any action against Plaintiff based upon any "orders" from Mayor Sutphin.  (Reply, p. 11).  Defendants argue that Plaintiff has not put forth any evidence that Walsh and Orr took action against Plaintiff based upon a retaliatory motive.  (Id., p. 11).  Defendants note that there is no evidence that Orr and Walsh ever took action against any other officer based on such a motive, and no evidence that Orr and Walsh ever made any statements targeting Plaintiff.  (Id., p. 11).[8]

---

[8]In fact, Walsh claims that he supported police officers' efforts to collectively bargain. Walsh did not distribute the handout entitled, "What Can This Union Really Do For You?" to the police officers.  (Walsh Affidavit, ECF No. 67-19, ¶13).  Walsh states that he supported the unionization of the police officers of the City of Jennings and that he has been a member of the FOP Lodge 15 for thirty (30) years.  (Id., ¶¶16, 18).

Plaintiff identifies several items that he claims demonstrate an issue of fact. First, Plaintiff notes that Walsh and Orr knew about his involvement in union organizing. See SUMF, ¶¶46, 47. Indeed, Plaintiff states that he frequently spoke about union activities and the FOP. (Response, p. 11).

In addition, Plaintiff claims that Orr did not support collective bargaining efforts. At meetings between Orr, Walsh and Lane, Orr indicated that he disagreed with what the union requested. (Id., p. 12). Plaintiff claims that "[t]hese union requests could only have been made known to Orr though some relay of speech from Plaintiff." (Id.). Orr was also a member of the Missouri Police Chiefs Association, a competing organization to the FOP. (Response, p. 13). Also several officers claimed that Orr opposed collective bargaining efforts because he did not want to shift the balance of power towards the rank and file officers. (Id.).

Plaintiff also argues that Orr and Walsh took orders to terminate Plaintiff from Mayor Sutphin. (Response, p. 13). As previously indicated, several officers testified that the Mayor Sutphin stated that he would rather have the police force turned over to St. Louis County than let the union have any influence. (Id.). Plaintiff claims that Orr and Walsh, as subordinates, had to take orders from Mayor Sutphin, who was anti-unionization. (Id., pp. 13-14).

The Court finds that Plaintiff provides sufficient evidence to support his first amendment claims against Orr and Walsh. First, even Orr and Walsh admit that they were aware of Plaintiff's position on the Union Bargaining Committee during the relevant period. In addition, Plaintiff provides evidence that Orr did not support the FOP. Finally, Plaintiff identifies evidence that Mayor Sutphin, from whom Orr and Walsh took direction, opposed unionization. Accordingly, the Court finds an issue of fact regarding whether Orr and Walsh took an adverse employment action against Plaintiff because of his union activities.

### D.    City of Jennings

1.    Existence of a Policy or Custom

A municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue.  City of Canton v. Harris, 489 U.S. 378, 385 (1989)(citing Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978)).  That is, "a municipality can be liable under § 1983 only where its policies are the moving force [behind] the constitutional violation."  City of Canton, 489 U.S. at 389 (internal quotation omitted); Monell, 436 U.S., at 694; Polk County v. Dodson, 454 U.S. 312, 326 (1981).  "[A] plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403 (1997)(citing Monell, 436 U.S. at 694; Pembaur v. Cincinnati, 475 U.S. 469, 480-81 (1986); Canton, 489 U.S. at 389).  "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts  may fairly be said to be those of the municipality.... Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."  Bd. of the County Comm'Rs, 520 U.S. at 403-04.

The Court notes that "[a]n unconstitutional governmental policy can be inferred from a single decision taken by the highest official responsible for setting policy in that area of the government's business."  Angarita v. St. Louis County, 981 F.2d 1537, 1546 (8th Cir. 1992); Pembaur v. Cincinnati, 475 U.S. 469, 484-85 (1986) (the Supreme Court upheld a finding of municipal liability for the violation of plaintiffs' constitutional rights where deputy sheriffs acted on the express instruction of the county prosecutor. Because the county prosecutor was acting as a final decision maker at the time, the Court concluded that the county could be held liable under Section 1983); but see Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 415-16 (1997)("Bryan County is not liable

for Sheriff Moore's isolated decision to hire Burns without adequate screening, because respondent has not demonstrated that his decision reflected a conscious disregard for a high risk that Burns would use excessive force in violation of respondent's federally protected right"). "Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether their 'decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur.'" Angarita, 981 F.2d at 1546 (quoting Jett v. Dallas Independent School District, 491 U.S. 701, 737 (1989)).

Defendants argue that no policy or custom exists that would implicate liability against the City. Plaintiff, however, argues that a "widespread custom of discrimination against the union activities of police officers" warrants liability under §1983. (Response, p. 22). Plaintiff states that "[b]ased on the City of Jennings' established policy as created and carried out by its municipal leaders, the municipality itself should be held liable." (Id.).

Here, the Councilmembers and/or Mayor Sutphin had final policymaking authority for the City of Jennings; were the highest ranking policy officials in the City of Jennings; and ultimately were responsible for employment decisions within the police department. See also Angarita, 981 F.2d at 1546. Plaintiff has provided some evidence to support a finding that the City of Jennings' highest officials were motivated by anti-union sentiments and that those sentiments represented the policy or custom of the City of Jennings. Accordingly, for purposes of summary judgment, the Court finds that the actions taken by the Councilmembers and/or Mayor Sutphin in their official capacities in this situation are sufficient to impose liability on the City of Jennings. Id.

2.    Cat's Paw Liability

In the alternative, Plaintiff claims that the City of Jennings can be held liable under a cat's paw theory of liability. "If a non-decision-maker performs an act motivated by a discriminatory bias

that is intended to cause, and that does proximately cause, an adverse employment action, then the employer is liable under the cat's paw theory of liability." Amini v. City of Minneapolis, 643 F.3d 1068, 1075 (8th Cir. 2011) (citing Staub v. Proctor Hosp., 131 S. Ct. 1186, 1194 (2011)); Qamhiyah v. Iowa State Univ. of Sci. & Tech., 566 F.3d 733, 742 (8th Cir. 2009) ("In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action."); Torgerson, 643 F.3d at 1045. .

Defendants argue that cat's paw liability does not apply to municipalities. (Defendants' Memorandum in Support of the Motion for Partial Summary Judgment on Counts I and II of the Second Amended Complaint ("Memorandum"), ECF No. 66, pp. 27-28).

The Court agrees that cat's paw liability does not apply to municipalities, which cannot be held liable on agency principles. See Memorandum, pp. 27-28; see Staub, 131 S. Ct. at 1194 (applying general principles of agency law, which form the background against which federal tort laws are enacted to a cat's paw claim); Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992)(quoting Monell, 436 U.S. at 691) ("a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory"). Plaintiff, therefore, cannot proceed against the City of Jennings on a cat's paw theory of liability.

### E.     Legitimate/Non-Discriminatory Reason/Pretext

Even if Plaintiff can establish a prima facie case for employment retaliation, Defendants claim that they had a legitimate non-discriminatory reason for terminating Plaintiff's employment and Plaintiff cannot provide evidence to demonstrate that the explanation proffered for Plaintiff's

termination was pretextual. (Memorandum, pp. 19-24; Reply, p. 14). That is, Defendants claim that they fired Plaintiff for not cooperating in an investigation of a complaint of harassment against him by failing to submit to the polygraph test ordered by Walsh.

Plaintiff asserts that the totality of the circumstances demonstrates pretext. Plaintiff claims that the reason provided for terminating his employment, i.e., insubordination for refusing to take an ordered polygraph examination, was pretextual. (Response, p. 20). Plaintiff claims that the causal connection between his union activities and his termination is strengthened by proof that Defendants' reasons for terminating Plaintiff were unfounded and false. (Response, p. 19); Campbell v. Arkansas Dep't of Correction, 155 F.3d 950, 958 (8th Cir. 1998)(quoting Stemmons v. Missouri Dept. of Corrections, 82 F.3d 817, 821 (8th Cir. 1996)("All of this evidence tended 'to undermine the . . . proffered reason for' demoting Campbell, 'and thus to establish that it was a pretext.'"). Specifically, Walsh, who investigated Pendino's harassment claim, determined that Pendino's claims were unsubstantiated. (Response, p. 20). Walsh did not investigate any of the other officers named in Pendino's complaint. (Id.). Although Walsh and Orr recommended to the City Council that Pendino be terminated, Plaintiff claims that Mayor Sutphin, Walsh, Orr or the City Council ordered a continuation of the investigation and a polygraph examination of Plaintiff. (Id.). Plaintiff also notes that this was the first time in Walsh's thirty year career that a police officer had been ordered to take a polygraph examination. (Id.). Moreover, Plaintiff asserts that he did not refuse to submit to the polygraph. Rather, Plaintiff claims that he was ready to take the examination, but that the polygraph administrator told Plaintiff not to continue because of his issues with the consent form. (Id., pp. 20-21).

The Court finds that Plaintiff has provided sufficient evidence of pretext to survive summary judgment. The Court notes that Walsh initially found no substantiation for Pendino's claims against Plaintiff. Nevertheless, the investigation of Plaintiff continued and he was ordered to undergo a

polygraph examination. The Court finds that this demonstrates a material issue of fact regarding whether Plaintiff was terminated for not cooperating in an investigation of a complaint against him, or for his union organizing. Accordingly, the Court denies summary judgment.

### F. Punitive Damages

Defendants note that the United States Supreme Court held that municipalities are immune from punitive damages under §1983. See Memorandum, p. 30; Newport v. Fact Concerts, 453 U.S. 247, 271 (1981)("a municipality is immune from punitive damages under 42 U. S. C. § 1983"); Jefferson v. City of Tarrant, 522 U.S. 75, 79 (1997); Fields v. Omaha, 810 F.2d 830, 835, n. 3 (8th Cir. 1987). Plaintiff does not dispute this case law and his claims for punitive damages against the City of Jennings fail as a matter of law. The Court grants summary judgment in favor of Defendant City of Jennings with respect to Plaintiff's claim for punitive damages.

## II. MOTION TO STRIKE

Defendants assert that paragraphs 11, 15, 16, 17, 19, 21, 22, 23, 24, 25, 28, 29, 30, 31 and 33 of Plaintiff's affidavit contain inadmissible hearsay statements and Plaintiff failed to properly authenticate Exhibits 30, 31, 33, 36, 37, 40, 44, 45, 46, 47, 50, 51, 54, 55, and 56. Defendants claim that those paragraphs and exhibits should be stricken and should not be considered in ruling on Defendants' Motion for Summary Judgment on Counts I and II.

### A. Paragraphs in the Affidavit

Defendants assert that paragraphs 11, 15, 16, 17, 19, 21, 22, 23, 24, 25, 28, 29, 30, 31 and 33 of Plaintiff's affidavit contain inadmissible hearsay statements and should be stricken. Defendants assert that those paragraphs "contain allegations of what Sam Yarbrough allegedly told Plaintiff and, therefore, are based upon inadmissible hearsay." (Defendants' Memorandum of Law in Support of Defendants' Motion to Strike the Inadmissible Allegations in Plaintiff's Affidavit and

the Inadmissible Exhibits Plaintiff Submitted in Support of his Response in Opposition to Defendants' Motion for Partial Summary Judgment on Counts I and II ("Memorandum"), ECF No. 93, p. 3). Specifically, Defendants note that the allegation in paragraph 21 contains Yarbrough's "opinion, speculation, and conclusion that Plaintiff 'was being coerced' to take the polygraph examination[.]" (Memorandum, p. 3). Defendants claim that this allegation lacks foundation and is not based on personal knowledge. (Id.).

Defendant also provides a specific objection to paragraph 41 because it allegedly misstates the reason for Plaintiff's termination set forth in the letter to Plaintiff from Cheryle Balke. (Memorandum, p. 4). The letter states that Plaintiff was terminated "for failing to co-operate in an investigation of a complaint of harassment filed against ... [Plaintiff] by another officer, by your failure to submit to a polygraph test as ordered by Lt. Col. Walsh." (Memorandum, p. 4).

Initially, Plaintiff claims that "Defendants make only the conclusory assertion in their Motion to Strike that certain paragraphs contain hearsay, without any detail, analysis, or indication as to what, if any, particular statements constitute hearsay or why such statements constitute hearsay." (Plaintiff's Response to Defendants' Motion to Strike the Inadmissible Allegations in Plaintiff's Affidavit and the Inadmissible Exhibits Plaintiff Submitted in Support of his Response in Opposition to Defendants' Motion for Partial Summary Judgment on Counts I and II ("Response"), ECF No. 96, p. 2). Plaintiff also asserts that he does not offer the statements at issue for the truth of the matter asserted under Fed.R.Evid. 801(c). (Id.). In response, Defendants argue that "[i]t seems obvious, however, that if a statement is being offered to prove that that statement was 'accurately stated,' then it is being offered to prove the truth of that statement and should be excluded as hearsay." (Defendants' Reply to Plaintiff's Response to Defendants' Motion to Strike the Inadmissible Allegations in Plaintiff's Affidavit and the Inadmissible Exhibits Plaintiff Submitted in Support of

his Response in Opposition to Defendants' Motion for Partial Summary Judgment on Counts I and II ("Reply"), ECF No. 97, pp. 3-4).

Plaintiff also states that the used those statements as the basis to form certain "beliefs stemming from those statements." (Response, p. 2). In response, Defendants argue that Plaintiff's "beliefs and opinions are not admissible evidence regardless of the basis of those beliefs and opinions." (Reply, p. 3). And, Defendants urge that "if Plaintiff is using those statements in an attempt to demonstrate how he formed certain beliefs and opinions, then he must be offering those statements to prove the truthfulness of those statements and those statements are inadmissible hearsay." (Id.).

Plaintiff also claims that the statements at issue fall within the present sense impression exception to the hearsay rule. Fed.R.Evid. 803(1). Defendant asserts that the statements do not fall within that exception because they do not describe an event or condition. (Reply, p. 3). In addition, there is no indication that there was substantial contemporaneity between the event or condition being described and the statement describing the event or condition. (Id., p. 4).

Finally, Plaintiff claims that the statements in paragraphs 21, 22 and 31 "are not excluded by the hearsay rule because of their status as an existing mental, emotional, or physical condition." (Response, p. 2). Defendants assume that Plaintiff is asserting that these paragraphs fit under the state of mind exception to the hearsay rule. (Reply, p. 4) (citing Fed.R.Evid. 803(3)). In response, Defendants assert that Plaintiff's statements do not fit within the state of mind exception "because the statements are statements of belief that Plaintiff is attempt to use to prove the facts of those beliefs." (Id., p. 4).

The Court finds that the statements at issue constitute hearsay and do not fit within any exception to the hearsay rule. The Court believes that Plaintiff is offering these statements for the truth of the matter asserted. Likewise, Plaintiff's affidavit provides no details to support his claim

that these statements relate to a present sense impression. Moreover, the Court does not believe that the statements fit within the state of mind exception to the hearsay rule. The alleged statements by Yarbrough are stricken from Plaintiff's affidavit, and the Court will not consider those statements in ruling the motion for summary judgment.

**B.    Exhibits**

Defendants assert that Plaintiff failed to properly authenticate Exhibits 30, 31, 33, 36, 37, 40, 44, 45, 46, 47, 50, 51, 54, 55, and 56 and that those exhibits should be stricken. Defendants argue that Plaintiff did not submit an affidavit based upon personal knowledge authenticating these documents. (Memorandum, pp. 4-5).

Plaintiff asserts that the documents at issue were all provided to Plaintiff by Defendants through the discovery process and consist of Defendants' own business records. (Response, p. 3). In an effort to cure the deficiencies noted by Defendants, Plaintiff provides his affidavit to his response to the motion to strike states that all of the exhibits in question are "accurate representations of the documents they purport to be." (ECF No. 96-1).

Unsatisfied by Plaintiff's affidavit, Defendants claim that the exhibits were "prepared by other individuals and not Plaintiff." (Reply, p. 6). Defendants assert that Plaintiff has no personal knowledge of the accuracy of the exhibits that were prepared by other individuals and Plaintiff cannot authenticate those exhibits. (Reply, p. 6). Defendant, however, does not provide any citation for his proposition that Plaintiff did not prepare these exhibits and that he has no personal knowledge of them.[9] The Court finds Defendants' objection to be unfounded and will consider these exhibits.

Accordingly,

_____

[9]In addition, Defendants state that, despite Plaintiff's affidavit to the contrary, Exhibits 31 and 51 were not provided to Plaintiff by Defendants during discovery. (Reply, p. 6). Defendants, however, provide no affidavit to support this contention. The Court will consider these exhibits.

**IT IS HEREBY ORDERED** that Defendant Allan D. Stichnote, Dennis Campbell, David Schmerber, Rodney Epps, Yolonda Fountain-Henderson, Richard G. Walsh, Robert J Orr, Benjamin Sutphin, and the City of Jennings, Missouri's Motion for Partial Summary Judgment on Counts I and II of the Second Amended Complaint (ECF No. 65) is **DENIED**, in part, and **GRANTED**, in part, in accordance with the foregoing.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike the Inadmissible Allegations in Plaintiff's Affidavit and the Inadmissible Exhibits Plaintiff Submitted In Support of his Response in Opposition to Defendants' Motion for Partial Summary Judgment on Counts I and II (ECF No. 92) is **DENIED**, in part, and **GRANTED**, in part, in accordance with the foregoing.

**IT IS FURTHER ORDERED** that this case is set for a pre-trial conference on **Thursday, February 9, 2012**, at **3:00 p.m.**

Dated this 13th day of January, 2012.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE